IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CITY OF OMAHA, NEBRASKA, a<br>Municipal Corporation, | ) | |
| | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **NOTICE OF REMOVAL** |
| | ) | |
| FIGG BRIDGE ENGINEERS, INC., and<br>FIGG ENGINEERING GROUP, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

PLEASE TAKE NOTICE that Defendants, Figg Bridge Engineers, Inc. and Figg

Engineering Group, hereby remove this action to the United States District Court for the District

of Nebraska.  The grounds for removal are as follows:

　　　　1.　　　A civil action was initially filed by Plaintiff, City of Omaha ("City"), against

Defendants, Figg Bridge Engineers, Inc. ("Figg Bridge") and Figg Engineering Group ("Figg

Engineering"), in the District Court of Douglas County, Nebraska, under the Docket 1070 and

No. 353 on March 30, 2007 (the "State Court Action").

　　　　2.　　　The Plaintiff in this action is City.  The Defendants and the parties removing this

action are Figg Bridge and Figg Engineering.

　　　　3.　　　A copy of the Complaint filed and the Summons served in the State Court Action

are attached hereto as Exhibit A, pursuant to 28 U.S.C. § 1446(a).  No other process, pleading, or

order has been served upon either Figg Bridge or Figg Engineering in the State Court Action,

and neither Figg Bridge nor Figg Engineering has filed any pleading in the State Court Action.

　　　　4.　　　This action may be properly removed to this Court pursuant to 28 U.S.C.

§ 1441(a) in that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, founded upon

diversity of citizenship.

5.      This is an action between citizens of different states where the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs as set forth more fully below.

6.      Defendants Figg Bridge and Figg Engineering are each a corporation incorporated under the laws of the State of Florida and each has its principal place of business in Florida.

7.      Plaintiff, City, is not incorporated in Florida and its principal place of business is not located in Florida.

8.      According to Plaintiff's Complaint, Plaintiff seeks damages in a principal amount in excess of $3,000,000.00.

9.      This Notice of Removal is being filed and served within thirty (30) days after the receipt by Defendants, Figg Bridge and Figg Engineering, through service or otherwise, of a copy of the initial pleadings setting forth the claim for relief, and therefore is timely under 28 U.S.C. § 1446(b).

10.     A copy of this Notice of Removal will be served promptly on Plaintiff's attorney of record and another copy will be filed promptly with the Clerk of the District Court for Douglas County, Nebraska.

WHEREFORE, Defendants Figg Bridge and Figg Engineering each prays that the above-captioned action be removed from the District Court of Douglas County, Nebraska, to this Court.

DATED this 26th day of April, 2007.

FIGG BRIDGE ENGINEERS, INC., and FIGG
ENGINEERING GROUP, Defendants,

By: _____

Edward H. Tricker, No. 15504
Todd W. Weidemann, No. 20505
WOODS & AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508
Telephone: 402-437-8500
Facsimile: 402-437-8558
etricker@woodsaitken.com
tweidemann@woodsaitken.com

and

Phil B. Abernethy
BUTLER, SNOW, O'MARA, STEVENS &
CANNADA, PLLC
210 East Capitol Street, 17th Floor
Post Office Box 22567
Jackson, Mississippi 39225-2567
Telephone: 601-985-4536
Facsimile: 601-985-4500

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon all parties hereto by
mailing a true and correct copy thereof via US First Class Mail, postage prepaid and properly
addressed, on this 26th day of April, 2007, to the counsel of record:

William M. Lamson, Jr.
Craig F. Martin
LAMSON DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, Nebraska 68114

and

Paul D. Kratz
City of Omaha, City Attorney
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, Nebraska 68183

_____
Edward H. Tricker

00231440

3

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

CITY OF OMAHA, NEBRASKA, A          )     DOC. *1070*        NO. *353*
Municipal Corporation,              )
                                    )
                Plaintiff,          )
                                    )
vs.                                 )          **COMPLAINT**
                                    )
FIGG BRIDGE ENGINEERS, INC.,        )
and FIGG ENGINEERING GROUP,         )     Plaintiff Demands a Trial by Jury
                                    )     Location of Trial: Omaha
                Defendants.         )     Assigned to Judge _____

*[Stamp: FILED IN DISTRICT COURT, DOUGLAS COUNTY, NEBRASKA, MAR 3 0 2007, JOHN M. FRIEND, CLERK DISTRICT]*

Plaintiff, City of Omaha ("Omaha"), files this complaint against FIGG Bridge Engineers,

Inc. and FIGG Engineering Group.  In support of its complaint, Omaha states as follows:

### The Parties

1.      Plaintiff, the City of Omaha ("Omaha") is a municipal corporation located in

Douglas County, Nebraska, organized and existing under and by virtue of the constitution, the

laws of the State of Nebraska and its Home Rule Charter.

2.      FIGG Bridge Engineers, Inc. is an engineering company which specializes in

design, management, and construction of bridges.

3.      Upon information and belief, FIGG Engineering Group is the parent corporation

of FIGG and other related entities (collectively referred to as "FIGG").

### Jurisdiction

4.      This Court has jurisdiction over this matter and that the services provided by

FIGG were provided to the City of Omaha, Douglas County, Nebraska.

5.      Venue is proper in this district pursuant to § 25-403.01 in that a substantial part of

the events or omissions giving rise to this action occurred in Douglas County, Nebraska.



## Background

6.     Several years ago the "Back to the River" initiative began planning a bridge to connect the trail system along the Missouri River between Nebraska and Iowa.  To tie these trails together, the cities of Omaha and Council Bluffs, along with the Nebraska Department of Roads and other entities, agreed to proceed to design and construct the Missouri River Pedestrian Bridge.

7.     Omaha submitted a request for proposals for an engineering or architecture firm to provide planning, engineering and architectural services necessary to design and construct the Missouri River Pedestrian Bridge with an estimated cost, including design costs, of $20 to $23 million.

8.     Omaha selected and contracted with FIGG to render professional services relating to the design and ultimate construction of the Missouri River Pedestrian Bridge.  Specifically, FIGG was to determine the bridge location and alignment, develop preliminary bridge layouts and structural alternatives, and prepare a preliminary design report for the project.  An Engineering Agreement ("Agreement") was executed by FIGG, Omaha, and the Nebraska Department of Roads between January 25, 2002 and February 8, 2002.  Attached marked as Exhibit "A" and incorporated by reference, is a true and correct copy of the Agreement.

9.     When FIGG executed the Agreement, FIGG was aware of the $22.6 million budget for the Missouri River Pedestrian Bridge.

10.     Under the Agreement, FIGG was to support Omaha in the design of the Missouri River Pedestrian Bridge, prepare summaries of estimated costs, a task description, and fee computation sheets setting forth the anticipated costs of construction.

2

11.    Through the design and engineering process, FIGG repeatedly assured Omaha representatives that the Missouri River Pedestrian Bridge could be built within the proposed budget.

12.    Omaha relied on FIGG's cost estimates and continued to proceed under the Agreement based on FIGG's representations.

13.    On March 5, 2004, the Nebraska Department of Roads opened the bids on the Missouri River Pedestrian Bridge project and the lowest bid exceeded the proposed budget by more than two hundred percent (200%).

14.    Omaha fully performed its obligations under the Agreement and has paid over $3 million to FIGG.

15.    Omaha terminated the Agreement on October 26, 2005, pursuant to section VII of the Agreement due to FIGG's material breach of the Agreement and demanded return of the in excess of $3,000,000 paid under the Agreement.

**First Claim for Relief**
**Breach of Contract**

16.    Omaha reasserts the allegations contained in paragraphs one through eighteen as though fully set forth herein.

17.    Omaha entered into the Agreement with FIGG with the understanding that FIGG would provide planning, engineering and architectural services necessary to design and construct the Missouri River Pedestrian Bridge within budgetary parameters.

18.    The Agreement provided, in relevant part:

The Consultant understands the City will rely on the professional performance and the ability of the Consultant to satisfactorily accomplish the work under this agreement.

Exhibit A, Agreement, Section IV Professional Performance.

3

19.     FIGG, after a number of meetings and consultation with Omaha, designed the Missouri River Pedestrian Bridge.

20.     FIGG assured Omaha on numerous occasions that the Missouri River Pedestrian Bridge could be constructed within the proposed budget.

21.     When bids for the Missouri River Pedestrian Bridge project were opened, the lowest bid exceeded the proposed budget by over two hundred percent (200%).

22.     Omaha fully performed its obligations under the Agreement and has paid over $3 million to FIGG.

23.     FIGG breached the Agreement with Omaha by failing to design and engineer the Missouri River Pedestrian Bridge in a manner that could be built within the proposed budget.

24.     FIGG breached the Agreement with Omaha in failing to inform Omaha of the difficulties associated with constructing the Missouri River Pedestrian Bridge and that it was unlikely that the Missouri River Pedestrian Bridge could be bid within the proposed budget.

25.     As a result of FIGG's breach of the Agreement, Omaha has been damaged in an amount to be proven at trial.

**Second Claim for Relief**
**Professional Negligence**

26.     Omaha reasserts the allegations contained in paragraphs one through twenty-eight as though fully set forth herein.

27.     FIGG held itself out as an expert in designing bridges and assured Omaha that the bridge design ultimately selected could be constructed within or near the proposed budget.

28.     In designing the Missouri River Pedestrian Bridge, FIGG had a duty to Omaha to act reasonably.

4

29.     FIGG knew or should have known that its design for the Missouri River Pedestrian Bridge could only be built for an amount significantly in excess of the budget, but failed to inform Omaha of this fact.

30.     Omaha reasonably relied on FIGG's representations that the Missouri River Pedestrian Bridge could be built within the proposed budget.

31.     FIGG failed to meet the appropriate standard of care expected of engineers and engineering firms in designing and engineering bridges within a set budget.

32.     As a direct and proximate result of FIGG's negligence, Omaha has been damaged.

### Third Claim for Relief
### Negligent Misrepresentation

33.     Omaha reasserts the allegations contained in paragraphs one through thirty-five as though fully set forth herein.

34.     FIGG supplied information to Omaha in the course of their business dealings concerning, *inter alia*, the estimated construction cost to build the proposed Missouri River Pedestrian Bridge and assured Omaha that it could be built within the proposed budget.

35.     The information FIGG supplied to Omaha was inaccurate due to the failure of FIGG to exercise reasonable care in obtaining, compiling and calculating the information.

36.     Omaha justifiably relied on the information provided by FIGG in going forward with the contract and in requesting bids for the Missouri River Pedestrian Bridge.

37.     As a result of Omaha's reliance on the information provided by FIGG, Omaha has been damaged.

### Fourth Claim for Relief
### Breach of Good Faith and Fair Dealing

38.    Omaha reasserts the allegations contained in paragraphs one through forty-one as though fully set forth herein.

39.    Nebraska law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Nebraska.

40.    FIGG breached the covenant of good faith and fair dealing by designing and engineering a bridge that could not be built within the budgetary limitations of the Missouri River Pedestrian Bridge project.

41.    As a result of the actions of FIGG set forth hereinabove, FIGG has violated the implied covenant of good faith and fair dealing owed to Omaha.

42.    The actions of FIGG in violation of the implied covenant of good faith and fair dealing have cause Omaha to suffer damages.

### Fifth Claim for Relief
### Unjust Enrichment

43.    Omaha reasserts the allegations contained in paragraphs one through forty-six as though fully set forth herein.

44.    FIGG received in excess of $3,000,000 in public funds from Omaha, the continued possession of which would unjustly enrich FIGG under the circumstances where FIGG delivered no value for the services it allegedly performed in exchange for the in excess of $3,000,000 it was paid by Omaha.

45.    Under the circumstances, it would be unjust to allow FIGG to enrich itself by retaining the funds paid by Omaha.

WHEREFORE, Omaha prays for the following relief:

6

(a)    For restitution in an amount to be determined at trial;

(b)    For compensatory damages in an amount to be determined at trial;

(c)    For recovery of Omaha's costs of this action and such reasonable attorneys' fees

to the extent allowed by applicable law; and

(d)    For such other and further relief as the Court may deem just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY.

CITY OF OMAHA, NEBRASKA, Plaintiff,

By: _____

William M. Lamson, Jr., #12354
Craig F. Martin, #21812
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE  68114
(402) 397-7300

and

Paul D. Kratz, #12318
City of Omaha, City Attorney
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE  68183

402372

7

# ENGINEERING AGREEMENT

CITY OF OMAHA
PROJECT NO. TCSP-STPB 28(67)
STATE CONTROL NO. 21949

THIS AGREEMENT, entered into by and between the City of Omaha, hereinafter referred to as the "City", and the firm of Figg Bridge Engineers, Inc., hereinafter referred to as the "Consultant".

WITNESSETH

WHEREAS, the City desires to engage the Consultant to render professional services for the above named project at the location shown on EXHIBIT "A", which is attached and hereby made a part of this agreement; and,

WHEREAS, the Consultant is certified by the Nebraska Secretary of State as a Corporation eligible to operate in the State of Nebraska; and,

WHEREAS, the Consultant is willing to perform such work in accordance with the terms hereinafter provided, and does represent that it is in compliance with the Nebraska statutes relating to the registration of professional engineers, and hereby agrees to comply with all federal, state, and local laws and ordinances applicable to the work.

NOW THEREFORE, in consideration of these facts, the City and Consultant agree as follows:

## I.    DEFINITIONS

Wherever in this agreement the following terms are used, or pronouns are used in their stead, they will mean:

1.    "CITY" means the Mayor of the City of Omaha or his authorized representative.



EXHIBIT

*A*

2.  "CONSULTANT" means Figg Bridge Engineers, Inc., whose business and mailing address is 424 N. Calhoun Street Tallahassee, FL 32301

3.  "SUBCONSULTANT/SUBCONTRACTOR" means the following firms: Bahr, Vermeer and Haecker Architects; AZ Environmental; Kirkham Michael; HWS Consulting Group; Alvine and Associates; Ayres & Associates; EDAW; and Mintz Lighting Group.

4.  "STATE" means the Nebraska Department of Roads in Lincoln, Nebraska, the Director of the department, or his authorized representative.

5.  "FHWA" means the Federal Highway Administration, Department of Transportation, Washington, D.C. 20590, acting through its authorized representatives.

6.  "DOT" means the United States Department of Transportation, Washington, D.C. 20590, acting through its authorized representatives.

7.  To "ABANDON" the work means the City has determined the conditions or intentions as originally existed have changed and the work as contemplated herein is to be renounced and deserted for as long in the future as can be foreseen.

8.  To "SUSPEND" the work means the City has determined the progress is not sufficient or the conditions or intentions as originally existed have changed or the work completed or submitted is unsatisfactory and the work as contemplated herein should be stopped on a temporary basis. This cessation will prevail until the City determines to abandon or terminate the work or to reinstate it under the conditions as defined in this agreement.

9.  To "TERMINATE" or the "TERMINATION" of this agreement is the cessation or quitting of this agreement based upon action or failure of action on the part of the Consultant as defined herein and as determined by the City.

## II.   GENERAL DESCRIPTION OF SCOPE AND CONTROL OF THE WORK

The Consultant shall determine the bridge location and alignment, develop preliminary bridge layouts and structural alternatives and prepare a preliminary design report for project TCSP-STPB 28(67), Missouri River Trail Crossing in Douglas County, Nebraska and Pottawattamie, County, Iowa.

Upon notice to proceed, the Consultant shall perform all of the work required under this agreement, as generally outlined in EXHIBIT "B", Scope of Services which is attached hereto and made a part of this agreement, and as more fully detailed in the Consultant's proposal dated January 4, 2002 which is hereby made a part of this agreement as if fully set forth herein.

The Consultant has furnished a summary of estimated costs, a task description, a schedule, personnel chart or list, and fee computation sheets, all as part of the Consultant's proposal.

- 2 -

III.    STANDARD PRACTICES AND REQUIREMENTS

It is mutually agreed that the City, State and the FHWA have continuing rights of work progress inspections. Any additions, deletions, changes, elaborations, or modifications of the services performed under the terms of this agreement, which may from time to time be determined by the City as desirable or preferable, will be controlling and governing.

IV.    TIME OF BEGINNING AND COMPLETION

The City will issue the Consultant a written Notice-to-Proceed upon approval of this agreement by the State. Work or services performed on the project shall not commence prior to the Notice-to-Proceed date. The Consultant shall do all the work according to the schedule in attached EXHIBIT "B" and shall complete all work required under this agreement to the satisfaction of the City.

The completion time will not be extended because of any avoidable delay attributed to the Consultant, but delays attributable to the City may constitute a basis for an extension of time.

City authorized changes in the scope of work, which increase or decrease work hours or services required of the Consultant, will provide the basis for a change of time and/or changes to the Consultant's fee.

V.    FEES AND PAYMENTS

A.    Method of Compensation: In consideration of performing the work as described in this agreement, the Consultant will be paid an amount not to exceed $1,187,000.00 unless authorized in writing through a supplement to this agreement. The method of compensation will be either Lump Sum or Specific Rate of Pay as shown below for each Consultant/Subconsultant.

Lump Sum Compensation:

Figg Bridge Engineers, Inc.

Bahr Vermeer Haecker Architects

Alvine & Associates

Mintz Lighting Group

Ayres & Associates

Specific Rate of Pay Compensation:

AZ Environmental

- 3 -

Kirkham Michael Consulting Engineers

HWS Consulting Group

EDAW Inc.

B.  Lump Sum Compensation

(1)  In consideration of performing the work assigned to the firms listed above under Lump Sum Compensation, and further described in EXHIBIT "B" and the Consultant's proposal dated January 4, 2002, the Consultant will be paid a lump sum fee of $633,000.00 plus other direct costs not to exceed $87,000.00, as shown below. The lump sum fee will constitute full payment for direct labor, indirect salary costs, indirect non-salary costs and profit for services necessary to complete that portion of the project as outlined. Other direct costs will be compensated as in Paragraph C(4) below.

| Firm | Lump Sum | Other Direct Costs |
|------|----------|--------------------|
| Figg Bridge Engineers, Inc. | $440,000.00 | $60,000.00 |
| Bahr Vermeer Haecker Architects | 126,000.00 | 15,000.00 |
| Alvine & Associates | 10,000.00 | 0.00 |
| Mintz Lighting Group | 31,000.00 | 9,000.00 |
| Ayres & Associates | 26,000.00 | 3,000.00 |
| Totals | $633,000.00 | $87,000.00 |

(2)  The cost criteria for the compensation of the lump sum fee and any renegotiation subsequently required is in 23 CFR 172 and 48 CFR 31.

(3)  The Consultant will, upon proper billing to the City, be paid a portion of the lump sum compensation based on the percentage of work completed at the end of each four-week period after the notice to proceed, plus other direct costs. The periodic payments to the Consultant will be based upon satisfactory prosecution of the work and must be substantiated by progress reports to be submitted with the Consultant's invoices. If the Consultant does not submit an invoice for a given period, the Consultant shall submit the progress report by the fifth day of the following period. The progress report must indicate the percent of work completed. The City will make every effort to pay the Consultant within 30 days of receipt of the Consultant's invoice.

(4)  The Acceptance by the Consultant of the final payment will constitute and operate as a release to the City for all claims and liability to the Consultant, its representatives and assigns, for any and all things done, furnished, or relating to the work rendered by the Consultant under or in connection with this agreement or any part thereof. The Consultant agrees to reimburse the City for overpayments discovered by the City or its authorized representative.

- 4 -

C.   Specific Rate of Pay Compensation

(1)   For performance of the work assigned to the Subconsultants listed above under Specific Rate of Pay Compensation, and further described in EXHIBIT "B" and the Consultant's proposal dated January 4, 2002, the Consultant will be paid an amount not to exceed   $467,000.00.

(2)   Compensation for the work described in paragraph (1) of this section shall be based on the applicable rates as shown in EXHIBIT "C" multiplied by the number of hours actually worked, plus other direct costs. The hours charged to the project must be supported by adequate time distribution records.   The records must clearly indicate the distribution of hours to all activities on a daily basis for the entire pay period, and there must be a system in place to ensure that time charged to each activity is accurate.

(3)   The term "applicable rates" as used in the agreement shall mean the labor rates described in EXHIBIT "C" that have been negotiated by the parties. These rates include direct labor, indirect salary costs, indirect non-salary costs and profit, and are fixed regardless of any changes in the Consultant/Subconsultant's actual labor and indirect costs.

(4)   Other direct costs are those types of costs allowed in the Consultant's proposal dated January 4, 2002, and directly incurred in fulfilling the terms of the agreement. Rates of reimbursement for currently anticipated in-house other direct costs shall be as shown in the Consultant's proposal for the respective Subconsultants. Rates of reimbursement for currently anticipated outside services shall be paid at actual reasonable invoice cost except that meals and lodging together shall not exceed $103.00 per person per travel day.   Rates of reimbursements for any additional other direct costs which may be required during the term of this agreement shall be only as approved by the City's representative. Before using any outside services and/or vendors not listed in the Consultant's proposal on the project, written approval shall be obtained from the City project manager. Any such outside service shall be paid at actual reasonable invoice cost.   The Consultant and/or Subconsultants shall not be paid a surcharge or profit on the other direct costs or outside services/vendors.   Other direct costs are subject to the terms of this agreement and the federal cost principles contained in the Federal Acquisition Regulation (48 CFR 31).

(5)   The Consultant is responsible for determining if its actual costs described in paragraph (2) of this section will exceed the maximum amount stated above. If at any time during this project, the Consultant determines that its costs will exceed, or have exceeded the maximum amount stated above, the Consultant must immediately notify the City in writing and describe which costs are causing the overrun and the reason. The Consultant must also estimate the additional costs needed to complete the work. The City will then determine if the maximum

amount is to be increased, and a supplemental agreement will be prepared if needed.

(6)   The City is not responsible for costs incurred prior to the Notice-to-Proceed date or after the completion date.

(7)   The Consultant should submit invoices to the City at four-week intervals. The invoices must present actual hours worked by individual in each labor category, multiplied by the applicable rates, plus actual other direct costs. Other direct costs must be itemized and provide a complete description of each item billed.   Periodic invoices must be substantiated by progress reports, which indicate the percent of work completed.   If the Consultant does not submit an invoice for a given period, it shall submit its progress report by the fifth day of the following period. The City will make every effort to pay the Consultant within 30 days of receipt of the Consultant's invoices.

(8)   The acceptance by the Consultant of the final payment will constitute and operate as a release to the City for all claims and liability to the Consultant, its representatives, and assigns, for any and all things done, furnished, or relating to the services rendered by or in connection with this agreement or any part thereof. The Consultant agrees to reimburse the City for any overpayments discovered by the City or its authorized representative.

D.      The Consultant shall maintain and require any subconsultants and subcontractors to maintain all books, documents, papers, accounting records, and other evidence pertaining to costs incurred, and shall make such materials available for examination at its office at all reasonable times during the agreement period and for three years from the date of final payment under this agreement.  The material must be available for inspection by the City, State, FHWA or any authorized representative of the federal government, and the Consultant shall furnish copies, when requested.  Lump Sum fees will not be adjusted as a result of this review.

## VI. PROFESSIONAL PERFORMANCE

A.      The Consultant understands the City will rely on the professional performance and the ability of the Consultant to satisfactorily accomplish the work under this agreement.  Any examination by the City, State or FHWA, or any acceptance or use of the work product of the Consultant, will not be considered to be a full and comprehensive examination and will not be considered an approval of the work product of the Consultant which would relieve the Consultant from any liability or expense that would be connected with the Consultant's sole responsibility for the propriety and integrity of the professional work to be accomplished by the Consultant pursuant to this agreement.  That further, acceptance or approval of any of the work of the Consultant by the City, or of payment, partial or final, will not constitute a waiver of any rights of the City to recover from the Consultant, damages that are caused by the Consultant due to negligence of the Consultant in

-6-

its work.   That further, if due to  negligence of the Consultant, the plans, specifications, and estimates are found to be in error or there are omissions therein revealed during the construction of the project and revision, correction or reworking of the plans is necessary, the Consultant shall make such revisions or corrections without expense to the City.   The Consultant shall respond to the City's notice of any errors or omissions within 24 hours and give immediate attention to these revisions or corrections to minimize any delays to the construction contractor.   If the Consultant discovers errors in its work, it shall notify the City of the errors within seven days.  Failure of the Consultant to notify the City will constitute a breach of this agreement.  The Consultant's legal liability for all damages incurred by the City caused by negligent acts of the Consultant will be borne by the Consultant without liability or expense to the City.

## VII.   CHANGE OF PLAN, ABANDONMENT, SUSPENSION, AND TERMINATION

Additions to the work under this agreement, if approved in writing, will require negotiation of a supplemental agreement.   For any additional work, the Consultant shall document the additional work, estimate the cost to complete the work, and receive written approval from the City before the Consultant begins the work.

The City can abandon the project or change the general scope of work at any time, and such action on its part shall in no event be deemed a breach of agreement.  The City can suspend this agreement at any time or terminate it.  Such suspension or termination will be affected by the City giving the Consultant seven days written notice.

If the City abandons or subtracts from the work, or suspends or terminates the agreement as presently outlined, the Consultant will be compensated in accordance with 48 CFR, Part 31, provided however, that in case of suspension, abandonment, or termination for breach of this agreement or for tender of improper work, the City can suspend payments, pending the Consultant's compliance with the provisions of this agreement.  In determining the percentage of work completed, the City will consider the work performed by the Consultant prior to abandonment or termination, to the total amount of work contemplated by this agreement.  The ownership of all plans, documents, etc., completed or partially completed under this agreement at the time of such termination or abandonment, will be retained by the City and the Consultant shall immediately deliver all plans, documents, etc., to the City.

## VIII.   OWNERSHIP OF DOCUMENTS

All surveys, tracings, plans, specifications, maps, computations, sketches, charts, and other data prepared or obtained under the terms of this agreement are the property of the City and the Consultant shall deliver them to the City without restriction or limitation to further use.

City acknowledges that such data may not be appropriate for use on an extension of the work covered by this agreement or on other projects. Any use of the data for any purpose other than that for which it was intended without the opportunity for Consultant to review the data and

modify it if necessary for the intended purpose will be at the City's sole risk and without legal exposure or liability to Consultant.

## IX.   FORBIDDING USE OF OUTSIDE AGENTS

The Consultant warrants that it has not employed or retained any company or person, other than a bona fide employee working for the Consultant, to solicit or secure this agreement, and that it has not paid or agreed to pay any company or person, other than a bona fide employee, any fee, commission, percentage, brokerage fee, gift, or any other consideration, contingent upon or resulting from the award or making of this agreement.  For breach or violation of this warranty, the City has the right to annul this agreement without liability, or, in its discretion, to deduct from the agreement price or consideration, or otherwise recover the full amount of such fee, commission, percentage, brokerage fee, gift, or contingent fee.

## X.   NON-RAIDING CLAUSE

The Consultant shall not engage the services of any person or persons presently in the employ of the City and State for work covered by this agreement without the prior written consent of the employer of the persons.

## XI.   GENERAL COMPLIANCE WITH LAWS

The Consultant agrees to comply with all federal, state, and local laws and ordinances applicable to the work.

## XII.   DISPUTES

Any dispute concerning a question of fact in connection with the work, not disposed of by this agreement, will be referred for determination to the Director of Parks, Recreation and Public Property or his duly authorized representative, whose decision in the matter will be final and conclusive on the parties to this agreement.

## XIII.   RESPONSIBILITY FOR CLAIMS AND LIABILITY

A.   The Consultant agrees to save harmless the City of Omaha, City of Council Bluffs, Papio-Missouri River Natural Resources District (NRD), State of Nebraska and State of Iowa from all claims and liability due to the negligent activities of the Consultant or those of Consultant's agents, or Consultant's employees, in the performance of work under this agreement.  In this connection, the Consultant shall, for the life of this agreement, carry insurance of the following types in at least the following amounts and on which the City of Omaha, City of Council Bluffs, NRD, State of Nebraska and State of Iowa are an additional named insured:

- 8 -

(1)  Bodily Injury and Property
              Damage with a combined          $1,000,000 per person
              single unit of liability of          $5,000,000 per occurrence

     or Bodily Injury
              General and Automobile          $1,000,000 each person
              General and Automobile          $5,000,000 each occurrence

     Property Damage
              General and Automobile          $250,000 each occurrence
              General                                  $500,000 aggregate

(2)  Workers' Compensation               Statutory

(3)  (a)      Valuable Papers                 With the City of Omaha named as
     (b)      Electronic Data               the loss payee. The insurance must
              Processing Charge            be in the amount of the total fee in
                                                       this agreement.

(4)  Professional Liability                  $2,000,000 per occurrence
                                                       $2,000,000 aggregate

B.   The insurance referred to in (1) above must be written under Comprehensive
General and Comprehensive Automobile Liability Policy Forms, including
coverage for all owned, hired, and non-owned automobiles. The Consultant may,
at its option, provide the limits of liability as set out above by a combination of
the above described policy forms and excess liability policies. The Consultant
shall furnish proof of insurance coverage to the City.

## XIV.   PROFESSIONAL REGISTRATION

The Consultant shall affix the seal of a registered professional engineer, licensed to
practice in the State of Nebraska, on all plans, documents and specifications prepared under this
agreement.

## XV.   SUCCESSORS AND ASSIGNS

This agreement is binding on the successors and assigns of either party.

## XVI.   DRUG-FREE WORKPLACE POLICY

The Consultant shall have an acceptable current drug-free workplace policy on file with
the City of Omaha.

## XVII.  FAIR EMPLOYMENT PRACTICES ACT

The Consultant agrees to abide by the Nebraska Fair Employment Practices Act as provided by Sections 48-1101 through 48-1126, Nebraska Revised Statutes (Reissue 1998), which is hereby made a part of and included in this agreement by reference.

## XVIII. DISABILITIES ACT

The Consultant agrees to comply with the Americans with Disabilities Act of 1990 (P.L. 101-366), as implemented by 28 CFR 35, which is hereby made a part of and included in this agreement by reference.

## XIX.  DISADVANTAGED BUSINESS ENTERPRISES

The Consultant agrees to ensure that disadvantaged business enterprises, as defined in 49 CFR 26, have the maximum opportunity to compete for and participate in the performance of subcontracts financed in whole or in part with federal funds under this agreement. Consequently, the disadvantaged business requirements of 49 CFR 26 are hereby made a part of and included in this agreement by reference.

The Consultant shall not discriminate on the basis of race, color, sex, disability pursuant to the ADA or national origin in the award and performance of FHWA assisted contracts. Failure of the Consultant to carry out the requirements set forth above will constitute a breach of this agreement and, after notification of the FHWA, may result in termination of this agreement by the City or such remedy as the City deems appropriate. The SUBLETTING, ASSIGNMENT, OR TRANSFER Section of this agreement further explains the Consultant's responsibility for ensuring that disadvantaged business enterprises have the maximum opportunity to compete for subcontracts.

## XX.  NONDISCRIMINATION

A.  <u>Compliance with Regulations</u>:  During the performance of this agreement, the Consultant, for itself and its assignees and successors in interest, agrees to comply with the regulations relative to nondiscrimination in federally assisted programs of the DOT (49 CFR 21 and 27, hereinafter referred to as the Regulations), which are herein incorporated by reference and made a part of this agreement.

B.  <u>Nondiscrimination</u>:  The Consultant, with regard to the work performed by it after award and prior to completion of the agreement work, shall not discriminate on the basis of race, color, sex, disability pursuant to the ADA or national origin in the selection and retention of subconsultants, including procurements of materials and leases of equipment. The Consultant shall not participate either directly or indirectly in the discrimination prohibited by 49 CFR 21.5, including employment practices, when the agreement covers a program set forth in Appendixes "A," "B," and "C" of 49 CFR 21.

C.  <u>Solicitations for Subagreements, Including Procurements of Materials and Equipment</u>:  In all solicitations either by competitive bidding or negotiation made by the Consultant for work to be performed under a subagreement, including procurements of materials or equipment, each potential subconsultant or supplier shall be notified by the Consultant of the Consultant's obligations under this agreement and the Regulations relative to nondiscrimination on the basis of race, color, sex, disability pursuant to the ADA or national origin.

D.  <u>Information and Reports</u>:   The Consultant shall provide all information and reports required by the Regulations, or orders and instructions issued pursuant thereto, and shall permit access to its books, records, accounts, other sources of information, and its facilities as may be determined by the City, State or the FHWA to be pertinent to ascertain compliance with such Regulations, orders, and instructions.  Where any information required of a Consultant is in the exclusive possession of another who fails or refuses to furnish this information, the Consultant shall so certify to the City, State or FHWA, as appropriate, and must set forth what efforts it has made to obtain the information.

E.  <u>Sanctions for Noncompliance</u>:   In the event of the Consultant's noncompliance with the nondiscrimination provisions of this agreement, the City will impose such agreement sanctions as it, the State or the FHWA may determine to be appropriate, including but not limited to withholding of payments to the Consultant under the agreement until the Consultant complies, and/or cancellation, termination, or suspension of the agreement in whole or in part.

F.  <u>Incorporation of Provisions</u>:   The Consultant shall include the provisions of paragraphs "A" through "E" in every subagreement, including procurements of materials and leases of equipment, unless exempt by the Regulations, order, or instructions issued pursuant thereto. The Consultant shall take such action, with respect to any subagreement or procurement, as the City, State or the FHWA may direct as a means of enforcing such provisions including sanctions for noncompliance, provided however, that in the event a Consultant becomes involved in or is threatened with, litigation with a subconsultant or supplier as a result of such direction, the Consultant may request that the City enter into such litigation to protect the interests of the City and, in addition, the Consultant may request that the State and the United States enter into such litigation to protect the interests of the State and United States.

## XXI.   SUBLETTING, ASSIGNMENT, OR TRANSFER

The Subconsultants/Subcontractors will be as shown in EXHIBIT "B".

Any other subletting, assignment, or transfer of any services to be performed by the Consultant is hereby prohibited unless prior written consent of the City is obtained.

The Consultant shall enter into an agreement with its subconsultants and subcontractors for work covered under this agreement. All subconsultant and subcontractor agreements for work covered under this agreement, in excess of $10,000, must contain similar provisions to those in this agreement. No right of action against the City will accrue to any subconsultant and/or subcontractor by reason of this agreement.

As outlined in the DISADVANTAGED BUSINESS ENTERPRISES Section of this agreement, the Consultant shall take all necessary and reasonable steps to ensure that disadvantaged business enterprises have the maximum opportunity to compete for and perform subcontracts. Any written request to sublet any other work must include documentation of efforts to employ a disadvantaged business enterprise.

## XXII. CONFLICT OF INTEREST

By signing this agreement, the Consultant certifies that it has no financial or other interests in the outcome of this project.

## XXIII. CONSULTANT CERTIFICATION

The Consultant hereby certifies that wage rates and other factual unit costs supporting the fees in this agreement are accurate, complete, current, and subject to adjustment, if required, as provided by Sections 81-1701 through 81-1721, Nebraska Revised Statutes (Reissue 1994).

After being duly sworn on oath, I, Eugene C. Figg, Jr., do hereby certify that except as noted below, neither I nor any person associated with the firm in the capacity of owner, partner, director, officer, principal investor, project director, manager, auditor, or any position involving the administration of federal funds:

a) has employed or retained for a commission, percentage, brokerage, contingent fee, or other consideration, any firm or person (other than a bona fide employee working solely for me or the above consultant) to solicit or secure this agreement; or,

b) has agreed, as an express or implied condition for obtaining this agreement, to employ or retain the services of any firm or person in connection with carrying out this agreement; or,

c) has paid, or agreed to pay, to any firm, organization or person (other than a bona fide employee working solely for me or the above consultant) any fee, contribution, donation, or consideration of any kind for, or in connection with procuring or carrying out this agreement, except as here expressly stated (if any).

Certification Regarding Debarment, Suspension, and Other
Responsibility Matters-Primary Covered Transactions

Instructions for Certification

1.      By signing this agreement, the Consultant is providing the certification set out below.

2.      The inability of a person to provide the certification required below will not necessarily result in denial of participation in this project. The Consultant shall submit an explanation of why it cannot provide the certification set out below. The certification or explanation will be considered in connection with the City's determination whether to enter into this agreement. However, failure of the Consultant to furnish a certification or an explanation will disqualify the Consultant from participation in this agreement.

3.      The certification in this clause is a material representation of fact upon which reliance was placed when the City determined to enter into this agreement. If it is later determined that the Consultant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal government, the City may terminate this agreement for cause or default.

4.      The Consultant shall provide immediate written notice to the City if at any time the Consultant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

5.      The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," and "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of the rules implementing Executive Order 12549.

6.      The Consultant agrees that should the proposed covered transaction be entered into, it will not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the City before entering into this agreement.

7.      The Consultant further agrees to include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion - Lower Tier Covered Transaction," provided by the State without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

8.      The Consultant in a covered transaction may rely upon a certification of a prospective Subconsultant in a lower tier covered transaction that it is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A Consultant may decide the method and frequency by which it determines the eligibility of its principals.

- 13 -

9.  Nothing contained in the foregoing will be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of the Consultant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

10. Except for transactions authorized under paragraph six of these instructions, if the Consultant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the federal government, the City may terminate this agreement for cause or default.

Certification Regarding Debarment, Suspension, and Other
Responsibility Matters - Primary Covered Transactions

A.  The Consultant certifies to the best of its knowledge and belief, that it and its principals:

(1) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any federal department or agency;

(2) Have not within a three-year period preceding this agreement been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) transaction or contract under a public transaction; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(3) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (federal, state, or local) with commission of any of the offenses enumerated in paragraph A.(2) of this certification; and

(4) Have not within a three-year period preceding this agreement had one or more public transactions (federal, state, or local) terminated for cause or default.

B.  Where the Consultant is unable to certify to any of the statements in this certification, such Consultant shall attach an explanation to this agreement.

I acknowledge that this certification is to be furnished to the State and the FHWA in connection with this agreement involving participation of federal-aid highway funds and is subject to applicable, state and federal laws, both criminal and civil.

## XXIV. CITY OF OMAHA CERTIFICATION

After being duly sworn on oath, I, Mayor Mike Fahey, by signing this agreement do hereby certify that the Consultant or its representative has not been required, directly or indirectly as an express or implied condition in connection with obtaining or carrying out this agreement to:

(a)     employ or retain, or agree to employ or retain, any firm or person; or,

(b)     pay or agree to pay to any firm, person, or organization, any fee, contribution, donation, or consideration of any kind.

I acknowledge that this certificate is to be furnished to the State and FHWA in connection with this agreement involving participation of federal-aid highway funds and is subject to applicable state and federal laws, both criminal and civil.

## XXV   ALL ENCOMPASSED

This instrument embodies the whole agreement of the parties. There are no promises, terms, conditions, or obligations other than contained herein, and this agreement supersedes all previous communications, representations, or other agreements or contracts, either oral or written hereto.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed by their proper officials thereunto duly authorized as of the dates below indicated.

STATE OF _FLORIDA_ )
                      )ss.
_LEON_ COUNTY )

After being duly sworn on oath, I do hereby acknowledge the foregoing certification and state that I am authorized to sign this agreement for the firm.

EXECUTED by the Consultant this _25th_ day of _JANUARY_ , 2002.

FIGG BRIDGE ENGINEERS, INC
Eugene C. Figg, Jr. P.E.

_Eugene C. Figg, Jr._
President/CEO

Subscribed and sworn to before me this _25th_ day of _January_ , 2002. _by Eugene C. Figg, who is personally known to me._

LuAnn Harr Cutshaw
MY COMMISSION # DD024329 EXPIRES
June 24, 2005
BONDED THRU TROY FAIN INSURANCE INC

_LuAnn Harr Cutshaw_
Notary Public

EXECUTED by the City this _7th_ day of _February_ , 2002.

WITNESS:

_[signature]_
City Clerk

CITY OF OMAHA, NEBRASKA
Mike Fahey

_Mike Fahey_
Mayor

STATE OF NEBRASKA
DEPARTMENT OF ROADS
Approved as to form
Eldon D. Poppe, P.E.

APPROVED AS TO FORM:

_[signature]_
ASSISTANT CITY ATTORNEY

_Eldon D. Poppe_
Roadway Design Engineer

_2-8-02_
Date

P:\Prpp1\10736f.doc

- 16 -

NK0207

EXHIBIT A



RIVERFRONT REDEVELOPMENT

OMAHA, NEBRASKA

EDAW 9.03.01

FIGG BRIDGE ENGINEERS, INC.
SCOPE OF SERVICES
MISSOURI RIVER PEDESTRIAN BRIDGE
OMAHA, NEBRASKA AND COUNCIL BLUFFS, IOWA

## PHASE I - PRELIMINARY DESIGN

### January 4, 2002

### GENERAL

This project consists of professional engineering services required to support the City of Omaha and the Project Sponsors in the design of a new pedestrian bridge crossing of the Missouri River between Omaha, Nebraska and Council Bluffs, Iowa. The Project Sponsors include the City of Omaha, City of Council Bluffs, Papio-Missouri River Natural Resources District, City of Omaha Arts Council, Nebraska Department of Roads, Iowa Department of Transportation and the Metropolitan Area Planning Association.

The new pedestrian bridge will be approximately 1,500' north of the existing I-480 bridge over the Missouri River. The west bank approach will be north of the existing Burt-Izard outfall in the area currently occupied by the Omaha City Docks. It is anticipated that this will include dual approach structures, with one structure continuing over the UPRR to the Convention Center north parking lot. The east approach will run through the river flood plain area and tie into the existing trail on top of the levee near Avenue B. The facility will provide for pedestrian and bicycle traffic, plus maintenance and emergency vehicles. Project features will conform to the Americans with Disabilities Act provisions.

The services to be provided include structural engineering and design support, such as environmental, civil engineering, hydraulics, utilities, survey, right-of-way, geotechnical, and aesthetic design features. The design support services will be provided through subconsultants, with general work assignments as follows:

Bahr Vermeer Haecker Architects – Support for aesthetic design features

AZ Environmental – Environmental studies

Kirkham Michael Consulting Engineers – Surveying, utilities and civil engineering

HWS Consulting Group, Inc. – Geotechnical engineering and hazardous materials

Alvine & Associates – Mechanical and electrical engineering

Boundary Layer Wind Tunnel Laboratory – Wind tunnel testing

Mintz Lighting Group – Aesthetic lighting

Ayres & Associates – River hydrology and hydraulics

Leslie Associates, Inc. – Public relations

EDAW – Landscape architecture and site planning

Engineering services included in this agreement are divided into three parts:

Part I – Preliminary Design

Part II – Final Design

Part III – Services After Design (Construction Inspection, Submittal Review, Design Office Support, etc.)

This Scope of Work includes tasks under Part I – Preliminary Design. Future Supplemental Agreements will provide for engineering services in Parts II and III.

Tasks to be performed by Figg Bridge Engineers, Inc. (FBE) are described in this Scope of Work. Tasks to be performed by subconsultants are described in the attached subconsultant work descriptions.

All work on this project will be performed in English units, and the plans, specifications, estimates, reports, etcetera produced will be shown with English units. Submittals of plans and specifications will be made in both reproducible hard copy originals and electronic files (MicroStation, Word 97 and Excel 97). Plan sheets will be on 11 x 17 inch bond.

## Schedule

As shown in the attached schedule, the total length of this portion of the work is approximately seven (7) months, with an anticipated Notice-To-Proceed January 2002.

## Items Furnished By the City of Omaha

The City of Omaha will furnish hard copies of existing relevant information such as surveys, master plans, site plans, geotechnical data, etc. for the areas adjacent to the project site to Figg Bridge Engineers for use in performing this project. Electronic files of items such as base maps will also be furnished if available.



# MISSOURI RIVER PEDESTRIAN BRIDGE

Project Schedule: Phase I - Preliminary Bridge Design

January 4, 2002

**FIGG BRIDGE ENGINEERS, INC.**
**SCOPE OF SERVICES**
**MISSOURI RIVER PEDESTRIAN BRIDGE**
**OMAHA, NEBRASKA AND COUNCIL BLUFFS, IOWA**

**PHASE I - PRELIMINARY DESIGN**

**January 4, 2002**

The following activities will be accomplished by Figg Bridge Engineers in this phase:

A.      **Meetings and Coordination**

1.      Establish a detailed project schedule for the consultant team work items, with the concurrence of the City, including meetings, submittals and other milestone dates.  Maintain and update the project schedule throughout the duration of Phase I.

2.      Participate in project kick-off meeting in Omaha/Council Bluffs.  Includes preparation and meeting minutes

3.      Lead and participate in monthly progress meetings, including preparation and meeting minutes.  A total of seven  (7) progress meetings to be held in Omaha/Council Bluffs are anticipated.

4.      Provide project management and coordination of the consultant team internally, with the Project Sponsors group and with outside agencies.  Work with the subconsultant team members to ensure that the tasks listed in their detailed work scopes are properly completed and coordinated.

5.      Produce periodic reports and billings at four-week intervals. These will include a discussion of work completed in the previous period, anticipated work the next period.

6.      Lead, coordinate and participate in a Public Information meeting in the Omaha/Council Bluffs area near the start of the project.  Prepare and give a presentation at the meeting on project scope, parameters and initial approach.

7.      Lead, coordinate and participate in a Public Hearing to discuss the draft Environmental Assessment document and present design alternatives. Prepare graphics for display illustrating the structure concepts.  This meeting will be repeated on consecutive days for a total of two hearings.



8.   Lead, coordinate and attend an agency scoping meeting for the project as part of the NEPA process.

9.   Lead and participate in miscellaneous meetings and phone conferences as required. It is assumed these will occur concurrent with other meetings or by teleconference.

10.  Coordinate with other agencies, including Metropolitan Area Transit (MAT), Corps of Engineers, U. S. Coast Guard, Union Pacific Railroad (UPRR), Iowa Department of Natural Resources, Omaha Airport Authority, HGM & Associates, and other departments within the cities of Omaha and Council Bluffs, and assist with permit applications.

11.  Prepare an application for a US Coast Guard Bridge permit using information for the selected bridge alternate.

**B.   Bridge Location and Alignment**

1.   Lead the project team to develop bridge alignment and geometry alternatives for the Missouri River Pedestrian Bridge meeting master plan constraints and acceptable structure parameters. This includes anticipated dual approach structures on the west side. One of these would touch down south of the main bridge alignment, and the other would span the UPRR tracks and touch down in the parking lot north of the Convention Center.

**C.   Preliminary Bridge Engineering**

1.   Compile and review available background information such as maps, reports, geotechnical studies, surveys, etcetera.

2.   Develop design criteria including geometric, loads and deflections.

3.   Develop preliminary bridge layouts and structure alternatives for the Missouri River Pedestrian Bridge and approach structures:

- Review the structure site data to identify requirements that will control the bridge parameters.

- Develop layout alternatives for the bridge showing overall length, width, skew and span configurations to satisfy the project requirements.

- Develop three structure type alternatives that best fit the project constraints including cable-stayed, arch and suspension bridge types.

Prepare conceptual level construction cost estimates for each based on square foot cost estimates.

- Be responsible for overall bridge aesthetics with assistance from BVH.

- With the Project Sponsors, screen the bridge type alternatives generated to a selected structure type to study structural alternatives in more detail.

- Perform conceptual engineering on the selected structure type to verify feasibility. This includes structure for any proposed elevator to the bridge deck and/or observation platform connected to the bridge structure.

- Study bridge foundation concepts based on available geotechnical and environmental information.

- Review the bridge structures for constructibility, including phasing, construction access, and river traffic maintenance. Prepare graphics illustrating recommended construction concepts.

- Compute preliminary cost estimates for bridge concepts.

- Evaluate the best-suited structure alternatives and how well they achieve the project objectives, including aesthetic goals.

- Work with the Project Sponsors in a Design Solutions Conference as described in item (D) to obtain consensus on a selected bridge configuration and features.

- Prepare bridge concepts for presentation at the Public Hearing and Design Solutions Conference. This includes three-dimensional computer graphics illustrating the overall bridge layout, features, pier shapes and other major elements.

- Perform preliminary engineering on the selected structure type with adopted configuration and features from the Design Solutions Conference to establish preliminary member sizes and refine the preliminary construction cost estimate.

- Produce preliminary general layout drawings of the structure selected for the Final Design phase.

4.   Conduct independent quality reviews of preliminary design and report.



**D.**   **Design Solutions Conference**

Prepare, coordinate and conduct a Design Solutions Conference with the Project Sponsors group to develop the bridge location, shapes and major features based on the selected bridge type. This will be a two-day event held in the Omaha / Council Bluffs area shortly after the Public Hearing. It is anticipated that approximately 40 people from the Project Sponsors will attend the conference as participants.

The goal of the conference is to develop a strong partnership and consensus between the members of the Project Sponsors and to select the major design features for the Missouri River Pedestrian Bridge such as alignment and configuration. The invitation list for guests to participate in the Design Solutions Conference will be developed by the Project Sponsors group. Through the discussions and voting at the conference, the participants in attendance will be a part of the aesthetic design process working together to select solutions for the bridge.

FBE will develop the invitation letter, agenda, and response forms based on the mailing list, and the letters will be signed and sent out by the City. The agenda will be based on previous successful conferences of similar projects and will be coordinated with the Project Sponsors. FBE will acquire the conference room for three days (set-up and event), provide two presentation screens, handle room set-up, morning and afternoon refreshments, lunch for participants, a video person and equipment for taping the conference, bus rental for viewing site and sound systems.

Prior to the Design Solutions Conference, FBE will meet with the appropriate members of the subconsultant team to develop, review, and organize ideas. An initial meeting will be held with Project Sponsors to discuss the conference and bridge ideas. Then, prior to the conference, another meeting with Project Sponsors will be held to finalize presentation information and complete conference materials and ideas.

The Design Solutions Conference will begin with a review of bridge aesthetics and things to consider in making project feature selections. After creating this visualization, a site visit will be made by bus with all the participants to examine views, scale and unique characteristics that should be considered. This will be followed by a presentation of multiple bridge ideas, including alignment, the selected bridge type, lighting and other features to provide a total picture of the project needs.

Multiple ideas for the bridge will be displayed and presented for participant voting. These may also create an evolution to a combination of features presented or suggested by participants. The voting will be computerized on site with results and feedback during the conference process. At the end of the Design Solutions Conference, the bridge alignment, type, configuration and major elements will be set.

The conference will be summarized in written form by FBE for distribution by Project Sponsors to all the participants. The resulting bridge solutions will also be presented at a project progress meeting approximately four (4) weeks after the Design Solutions Conference. A second Design Solutions Conference may be held as part of the Final Design phase under a future Supplemental Agreement. This would build on the results of the first conference and would finalize the aesthetic details for the bridge. The participants could be the same as the first conference, or could include the public, depending on the preferences of the Project Sponsors.

**E.     Report**

Prepare a Preliminary Design Report, summarizing the results of the Preliminary Design phase and providing recommended concepts to carry forward into the Final Design phase. Topics addressed will include the design criteria, structure layout and concepts, foundation concepts, constructibility, aesthetics, results of the Design Solutions Conference, project costs, and the recommended alternative.

**Deliverables**

1.     Project Schedule

2.     Periodic Reports and Billings.

3.     Meeting Minutes for all meetings, incorporating minutes from each subconsultant for their area of responsibility.

4.     Preliminary bridge layout drawings

5.     Materials for the Design Solution Conference, including invitations, presentation and workshop materials, and conference report

6.     Graphics for the Public Hearing illustrating bridge layout, structure type and aesthetics

7.     Preliminary Design Report (20 copies)

8.     US Coast Guard Bridge Permit application package

9.     Preliminary construction cost estimates

# MISSOURI RIVER PEDESTRIAN BRIDGE
## OMAHA, NEBRASKA AND COUNCIL BLUFFS, IOWA

January 4, 2002

## COMPENSATION SUMMARY

### Phase I - Preliminary Design

| | | | | |
|---|---|---|---|---|
| Project Management/Administration | 432 HRS @ | $171.68 | = | $74,165.76 |
| Principal Bridge Engineer | 688 HRS @ | $165.71 | = | $114,008.48 |
| Bridge Engineers/Designers | 1,696 HRS @ | $117.46 | = | $199,212.16 |
| CADD Technicians | 480 HRS @ | $90.05 | = | $43,224.00 |
| Administrative Assistants | 180 HRS @ | $51.45 | = | $9,261.00 |

| | | |
|---|---|---|
| Total Labor | 3,476   HRS | $439,871.40 |
| Nonsalary Direct Costs | | $60,474.00 |
| Total | | $500,345.40 |

| | |
|---|---|
| **Use Lump Sum FBE  *** | **$500,000** |

| | |
|---|---|
| Bahr Vermeer Haecker Architects  * | $141,000 |
| AZ Environmental | $137,000 |
| Kirkham Michael Consulting Engineers | $146,000 |
| HWS Consulting Group (Geotechnical) | $36,000 |
| HWS Consulting Group (Hazardous Materials) | $23,000 |
| Alvine & Associates  * | $10,000 |
| Mintz Lighting Group  * | $40,000 |
| Ayres & Associates  * | $29,000 |
| EDAW | $125,000 |

| | |
|---|---|
| **Total Estimated for Preliminary Design** | **$1,187,000** |

* Indicates Lump Sum.  All others are Specific Rate of Pay.

Page 1

Figg Bridge Engineers, Inc.

# MISSOURI RIVER PEDESTRIAN BRIDGE
## OMAHA, NEBRASKA AND COUNCIL BLUFFS, IOWA

January 4, 2002

## SUMMARY OF MANHOURS

### Phase I - Preliminary Design

| Task | Project Managmnt | Principal Bridge Eng | Bridge Eng /Designer | CADD Technician | Admin Assistant |
|------|----:|----:|----:|----:|----:|
| **A.  Meetings and Coordination** | | | | | |
| Establish & Maintain Project Schedule | 32 | 0 | 0 | 0 | 0 |
| Kick-Off Meeting w/Prep & Minutes | 12 | 12 | 0 | 0 | 4 |
| Progress Meetings w/Prep & Minutes (7) | 84 | 84 | 112 | 56 | 28 |
| Project Management / Coordination | 56 | 0 | 0 | 0 | 40 |
| Progress Reports | 16 | 0 | 0 | 0 | 0 |
| Public Info Meeting & Presentation | 12 | 12 | 40 | 40 | 8 |
| Public Hearings on Draft EA w/Prep | 12 | 12 | 32 | 16 | 8 |
| Agency Scoping Meeting w/Coord | 8 | 0 | 16 | 0 | 0 |
| Misc Meetings & Phone Conferences | 16 | 16 | 32 | 0 | 0 |
| Coordinate with Other Agencies | 24 | 0 | 40 | 0 | 0 |
| USCG Bridge Permit Application | 0 | 8 | 32 | 24 | 8 |
| | | | | | |
| **B.  Bridge Location and Alignment** | | | | | |
| River Bridge Alignment & Geom Alts | 0 | 24 | 40 | 0 | 0 |
| | | | | | |
| **C.  Conceptual Bridge Engineering** | | | | | |
| Compile & Review Background Info | 0 | 8 | 24 | 0 | 0 |
| Develop Design Criteria | 0 | 24 | 40 | 0 | 0 |
| Develop Preliminary River Bridge Layouts | | | | | |
|   Review Structure Site Data | 0 | 8 | 16 | 0 | 0 |
|   Develop Layout Alternatives | 0 | 24 | 64 | 0 | 0 |
|   Develop Structure Type Alternatives | 0 | 40 | 120 | 40 | 0 |
|   Bridge Aesthetics | 40 | 80 | 0 | 40 | 0 |
|   Screen Alternatives | 16 | 16 | 32 | 0 | 0 |
| | | | | | |
| **PAGE SUBTOTALS** | 328 | 368 | 640 | 216 | 96 |

Figg Bridge Engineers, Inc.

# MISSOURI RIVER PEDESTRIAN BRIDGE
## OMAHA, NEBRASKA AND COUNCIL BLUFFS, IOWA

January 4, 2002

## SUMMARY OF MANHOURS

### Phase I - Preliminary Design

| Task | Project Managmnt | Principal Bridge Eng | Bridge Eng /Designer | CADD Technician | Admin Assistant |
|---|---|---|---|---|---|
| Develop River Bridge Layouts (Cont.) | | | | | |
|   Conceptual Bridge Engineering / 3 Alts | 0 | 48 | 120 | 0 | 0 |
|   Study Bridge Foundations | 0 | 16 | 32 | 0 | 0 |
|   Constructibility Review & Graphics | 0 | 16 | 32 | 16 | 0 |
|   Preliminary Cost Estimates | 0 | 8 | 40 | 0 | 0 |
|   Evaluate Shortlisted Bridge Alternatives | 0 | 16 | 40 | 0 | 0 |
|   Present Results & Select Alternate | 0 | 8 | 16 | 8 | 0 |
|   Prepare Bridge Concepts for Presentation | 0 | 24 | 40 | 80 | 0 |
|   Preliminary Engineering / Selected Alt | 0 | 32 | 200 | 0 | 0 |
|   Layout Drawings for Selected Alternate | 0 | 0 | 16 | 80 | 0 |
| Quality Control / Assurance Reviews | 16 | 40 | 120 | 16 | 0 |
| | | | | | |
| **D.  Design Solutions Conference** | | | | | |
| Organize Design Solutions Conference | 24 | 16 | 64 | 16 | 24 |
| Design Solutions Conf Planning Meetings | 16 | 16 | 16 | 0 | 0 |
| Conduct Design Solutions Conference | 32 | 32 | 120 | 0 | 0 |
| Document/Follow-up Dsgn Solutions Conf | 8 | 16 | 64 | 0 | 16 |
| | | | | | |
| **E.  Report** | | | | | |
| Create Draft Report | 8 | 24 | 96 | 40 | 24 |
| Incorporate Review Comments | 0 | 8 | 24 | 8 | 4 |
| Produce & Distribute Final Report | 0 | 0 | 16 | 0 | 16 |
| | | | | | |
| **PAGE SUBTOTALS** | 104 | 320 | 1056 | 264 | 84 |
| **TOTALS** | 432 | 688 | 1696 | 480 | 180 |

Page 3

Figg Bridge Engineers, Inc.

## SPECIFIC RATES OF PAY

| Subconsultant | Labor Category | Specific Rate of Pay ($/hour) |
|---|---|---|
| AZ Environmental | Amy Zlotsky | $85.00 |
| | HWS Subconsulting | $75.00 |
| | | |
| Kirkham Michael | Principal | $166.40 |
| | Project Manager | $166.40 |
| | Senior Engineer | $115.75 |
| | Professional Engineer | $86.83 |
| | CADD Technician | $48.15 |
| | Clerical | $36.12 |
| | Survey Crew Member | $60.19 |
| | Licensed Surveyor | $88.79 |
| | | |
| HWS Consulting Group | Executive Project Consultant | $110.00 |
| | Senior Project Consultant | $85.00 |
| | Experienced Engineering Geologist | $40.00 |
| | Advanced Driller | $40.00 |
| | Experienced Driller | $35.00 |
| | Driller | $30.00 |
| | Experienced Clerical Assistant | $30.00 |
| | Principal | $107.00 |
| | Senior Field Technician | $52.00 |
| | Senior Technician | $52.00 |
| | Technician | $40.00 |
| | Clerk II | $30.00 |
| | | |
| EDAW | Principal Designer | $209.79 |
| | Project Manager | $105.13 |
| | Senior Landscape Architect | $123.60 |
| | Junior Landscape Architect | $68.71 |
| | Staff / Admin. | $62.05 |
| | | |

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| CITY OF OMAHA, NEBRASKA, A Municipal Corporation, | ) ) ) | DOC. *1070*          NO. *353* |
| Plaintiff, | ) ) | |
| vs. | ) ) | **PRAECIPE** |
| FIGG BRIDGE ENGINEERS, INC., and FIGG ENGINEERING GROUP, | ) ) ) | |
| Defendants. | ) ) | |

Please issue Summons and a copy of the Complaint to be served by Certified Mail on the

following:

Figg Bridge Engineers, Inc.
c/o CT Corporation System
301 South 13th Street, Suite 500
Lincoln, NE 68508

FILED
IN DISTRICT COURT
DOUGLAS COUNTY, NEBRASKA

MAR 3 0 2007

JOHN M. FRIEND
CLERK DISTRICT COURT

Please notify Plaintiff's attorney when said Summons is ready.

CITY OF OMAHA, NEBRASKA, A Municipal
Corporation, Plaintiff,

By: _William M Lamson_

William M. Lamson, Jr., #12374
Craig F. Martin, #21812
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
(402) 397-7300

and

Paul D. Kratz, #12318
City of Omaha, City Attorney
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183





IN THE DISTRICT COURT, DOUGLAS COUNTY, NEBRASKA

City of Omaha, Nebraska, A Municipal Corporation

vs.

Figg Bridge Engineers, Inc., and Figg Engineering Group

SUMMONS BY CERTIFIED MAIL                    DOC. 1070 NO. 353

STATE OF NEBRASKA  )
COUNTY OF DOUGLAS  )

      This is to notify Figg Bridge Engineers, Inc.,
              (Impleaded with other)

Defendant that you have been sued by City of Omaha, Nebraska, A
                       Municipal Corporation

Plaintiff in the District Court of said County, and that in order to
defend the lawsuit you must file an appropriate written response in
the Office of the Clerk of said Court within thirty days after service
of Summons and Complaint in answer to the Complaint said Plaintiff
filed against you or such Complaint will be taken as true and judgment
rendered accordingly for the relief demanded in the attached
Complaint.

RETURN of this Summons is due within ten days after return of the
signed receipt.

      WITNESS my signature and the Seal of said Court at Omaha
      and issued this 30th day of March, 2007.

                        JOHN M. FRIEND, CLERK

                        BY:
                        Deputy

ATTORNEY FOR PLAINTIFF:
NAME:     William M. Lamson Jr.
ADDRESS:  10306 Regency Parkway Drive
          Omaha, NE 68114
PHONE:    (402) 397-7300

CERTIFIED MAIL

PROOF OF SERVICE BY AFFIDAVIT

STATE OF NEBRASKA )
                  )     SS.
COUNTY OF DOUGLAS )

    A copy of this writ was mailed by certified mail, return receipt requested, to defendant: Figg Bridge Engineers, Inc., c/o CT Corporation System, at the following address: 301 South 13th Street, Suite 500, Lincoln, Nebraska 68508, on the 30th day of _____March_____, 2007, which was within ten days of issuance as required by Nebraska Statute.

    The return receipt was signed on the 2nd day of April, 2007 (signed return receipt attached hereto). All done pursuant to the Nebraska Revised Statutes (Cumulative Supplement 1983).

FURTHER AFFIANT SAYETH NOT.

                      Craig F. Martin, #21812
                      Attorney for: Plaintiff

          SUBSCRIBED and sworn to before me this 3rd day of April, 2007.

                      Notary Public

POSTAGE: $6.08

> GENERAL NOTARY - State of Nebraska
> AMANDA J. SEALOCK
> My Comm. Exp. March 11, 2011

FILED
IN DISTRICT COURT
DOUGLAS COUNTY, NEBRASKA
APR 4 2007
JOHN M. FRIEND
CLERK DISTRICT COURT

ATTACH RETURN RECEIPT HERE

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____  ☐ Agent  ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Figg Bridge Engineers, Inc.<br>c/o CT Corporation System<br>301 South 13th Street, Suite 500<br>Lincoln, NE 68508 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service) | 7006 0810 0000 9484 3363 |
| PS Form 3811, February 2004 | Domestic Return Receipt    102595-02-M-1540 |

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | | |
|---|---|---|---|
| CITY OF OMAHA, NEBRASKA, A Municipal Corporation, | ) ) ) | DOC. 1070 | NO. 353 |
| Plaintiff, | ) ) ) | | |
| vs. | ) ) | **PRAECIPE** | |
| FIGG BRIDGE ENGINEERS, INC., and FIGG ENGINEERING GROUP, | ) ) ) | | |
| Defendants. | ) ) | | |

FILED
IN DISTRICT COURT
DOUGLAS COUNTY, NEBRASKA

APR 5 2007

JOHN M. FRIEND
CLERK DISTRICT COURT

Please issue Summons and a copy of the Complaint to be served by Certified Mail on the following:

FIGG Engineering Group, Inc.
c/o Robert A. Pierce, Registered Agent
227 South Calhoun Street
Tallahassee, FL 32301

Please notify Plaintiff's attorney when said Summons is ready.

CITY OF OMAHA, NEBRASKA, A Municipal Corporation, Plaintiff,

By: _____
William M. Lamson, Jr., #12374
Craig F. Martin, #21812
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
(402) 397-7300

and

Paul D. Kratz, #12318
City of Omaha, City Attorney
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183



IN THE DISTRICT COURT, DOUGLAS COUNTY, NEBRASKA

City of Omaha, Nebraska Municipal Corporation

vs.

Figg Bridge Engineers, Inc., and Figg Engineering Group

**SUMMONS BY CERTIFIED MAIL**                    DOC. 1070 NO. 353

**STATE OF NEBRASKA** )
**COUNTY OF DOUGLAS** )

This is to notify Figg Engineering Group
(Impleaded with other)

Defendant that you have been sued by City of Omaha, Nebraska Municipal
Corporation

Plaintiff in the District Court of said County, and that in order to
defend the lawsuit you must file an appropriate written response in
the Office of the Clerk of said Court within thirty days after service
of Summons and Complaint in answer to the Complaint said Plaintiff
filed against you or such Complaint will be taken as true and judgment
rendered accordingly for the relief demanded in the attached
Complaint.

RETURN of this Summons is due within ten days after return of the
signed receipt.

WITNESS my signature and the Seal of said Court at Omaha
and issued this 5th day of April 2007.

JOHN M. FRIEND, CLERK

BY:

Deputy

**ATTORNEY FOR PLAINTIFF:**
NAME:    Craig F. Martin
ADDRESS: 10306 Regency Parkway Drive
         Omaha, NE 68114
PHONE:   (402) 397-7300

CERTIFIED MAIL

PROOF OF SERVICE BY AFFIDAVIT

STATE OF NEBRASKA )
                 )    SS.
COUNTY OF DOUGLAS )

    A copy of this writ was mailed by certified mail, return receipt requested, to defendant: _____ FIGG Engineering Group, Inc., c/o Robert A. Pierce, Registered Agent _____
at the following address: 227 South Calhoun Street, Tallahassee, FL 32301 _____
on the __6th__ day of _____April_____, 20_07_, which was within ten days of issuance as required by Nebraska Statute.

    The return receipt was signed on the __11th__ day of _April_, 2007__ (signed return receipt attached hereto). All done pursuant to the Nebraska Revised Statutes (Cumulative Supplement 1983).

FURTHER AFFIANT SAYETH NOT.

                                   Craig F. Martin, #21812
                                   Attorney for: Plaintiff _____

        SUBSCRIBED and sworn to before me this 16th day of _____April_____, 20_07_

GENERAL NOTARY - State of Nebraska
KRISTINE FLOTT
My Comm. Exp. Aug. 20, 2010

                                 Notary Public

FILED
IN DISTRICT COURT
DOUGLAS COUNTY, NEBRASKA
APR 1 7 2007
JOHN M. FRIEND
CLERK DISTRICT COURT

POSTAGE: _____ $6.08 _____

ATTACH RETURN RECEIPT HERE

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery 4-11-07 |
| 1. Article Addressed to:<br><br>FIGG Engineering Group, Inc.<br>c/o Robert A. Pierce, Registered Agent<br>227 South Calhoun Street<br>Tallahassee, FL 32301 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 706 0810 0000 9484 3394 |
| PS Form 3811, February 2004 | Domestic Return Receipt     102595-02-M-1540 |